UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No. 18-CR-10241 |
| | ) | |
| | ) | |
| JOSEPH T. KUKSTIS | | |

**SENTENCING MEMORANDUM**

    Joseph Kukstis accepted responsibility by pleading guilty to an Information in this matter. He pled guilty for the crime of Cyberstalking three victims, Jane Doe A, B, and C, pursuant to a plea agreement. Mr. Kukstis asks this Court to sentence him to a period of 18 months, followed by 3 years of supervised release, including conditions restricting use of computers, and mental health counseling. The defense urges the court to consider a period of home confinement following incarceration, in lieu of a longer period of incarceration in a prison setting.

    Mr. Kukstis hid behind the screen of a cell phone to commit these crimes.  During the last several years, he failed to grasp the seriousness of this kind of conduct. His manner of handling rejection and trust in relationships was immature at best, frightening at worst. He affected the lives of people he cared about and, in one instance, someone he did not know well at all. He accepts responsibility for each act. He now expresses understanding of the wrongfulness of his conduct, and regret for how he hurt those around him. He is rational and clear-headed without the high dosages of medication and marijuana that predated his incarceration. His letter to the court is included as Exhibit A.   Additionally, letters of support from family and friends are included as Exhibit B.

    The requested sentence of 18 months balances the need for incarceration with the goals of

rehabilitation. Mr. Kukstis has never served a jail sentence before. The last seven months away from his family have been eye opening. Mr. Kukstis spent this time taking available classes and communicating with his family. He looks forward to the opportunity to participate in additional counseling and mental health treatment on supervised release. A guideline sentence of 41-51 months in this case is greater than necessary to address the sentencing goals. Mr. Kukstis's behavior, while troubling, does not reach the level where a long prison sentence is the only appropriate response. Rather, a sentence that balances incarceration with carefully constructed conditions of supervised release that promote rehabilitation is appropriate here.

      I.      **<u>Sentencing Goals and Appropriate Sentence</u>**

Pursuant to 18 U.S.C. §3553(a)(2), the court must consider the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The defense urges the court to impose a sentence of 18 months, followed by three years of supervised release. This kind of sentence meets each of the four important purposes of sentencing, and effectively balances the need to incarcerate with the need to rehabilitate.  An 18 month sentence is sufficient, but not greater than necessary, to achieve the sentencing goals under 18 U.S.C. § 3553(a)(1). *United States v. Kimbrough*, 128 S.Ct. 558 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008). A sentence of 18 months reflects the seriousness of the offense, provides just punishment, and promotes respect for the law. This

sentence also serves as an adequate deterrent for Joseph Kukstis who has been incarcerated continuously since his arrest in this case and who has never served time a jail setting before.

A. **History and Characteristics**

FILED UNDER SEAL

B. **Nature and Circumstances of Offense**

Mr. Kukstis pled guilty to three offenses involving three separate victims. It is appropriate to provide context for each relationship and crime. It is similarly appropriate to examine the type of behavior exhibited by Mr. Kukstis in each instance. A review of the presentence report reveals a young man who never developed appropriate ways to handle romantic relationships. When he experienced rejection, or a lack of trust from a partner, or bullying from peers, he lashed out inappropriately. In every instance, his conduct involved using social media or text messaging. He repeated this behavior over the years. This manner of behavior reflects immaturity and a lack of understanding about the real life consequences for the other person. He experienced hurt, and then inflicted hurt on the other person. Today, he understands how this behavior is criminal. He also understands that it was demoralizing, destructive, and confounding to his victims.

**Jane Doe C (November – December 2017)**

The harassing conduct towards Jane Doe C was the shortest in duration, and the two did not have a previous romantic relationship. In this instance, he met Jane Doe C through social media in November 2017. The two did not meet in person, but they did exchange phone numbers. They text messaged one another in a way Jane Doe C characterized as mild flirting. During this time period, she also received anonymous messages from unknown numbers, in fact Mr. Kukstis. The sender of the messages purported to be her ex-boyfriend, which frightened her because she

had a restraining order against that person, and did not know where he was living at the time. She quickly determined the sender was not in fact her ex-boyfriend. Mr. Kukstis anonymously texted a series of unkind messages. The most serious message amongst was, "Kill yourself." Mr. Kukstis never attempted to reach out to Jane Doe C in person. His communication with her was limited to a two-month period in 2017. According to Jane Doe C's statement to FBI, the harassing messages occurred on four separate dates, December 4, 10, 12, and 16, 2017.

Mr. Kukstis writes, "There was nothing funny about what I did. I acted out of pure stupidity, and let my immaturity and bruised ego get the best of me. I am most sorry for bringing back painful memories, those of which I'm sure you want to forget." Exhibit A. The behavior was similar to the type of language he used with Jane Doe B and A.

**Jane Doe B (October 2014 – August 2015)**

Jane Doe B is a young woman Mr. Kukstis was in a romantic relationship with for approximately one year, in 2013 up and through November 2014. At times, Jane Doe B lived with Mr. Kukstis and his family. It was an on again-off again relationship. There were trust issues between the two of them, causing fights and then, frequently, reconciliation.

In October 2014, police arrested Mr. Kukstis for a domestic violence incident where Jane Doe B was the victim. She obtained a restraining order following his arrest. Following that date, the two continued to see one another, in violation of the restraining order, for a period of about one month, after which the relationship permanently ended. In December 2014, Jane Doe B reported anonymous text messages to local police. In August 2015, she reported anonymous messages on social media accounts, as well as a message from Mr. Kukstis himself. Ultimately, the criminal case resulted in a Continuation Without a Finding (CWOF) and it was dismissed in 2016. PSR ¶ 72.

Jane Doe B describes the anonymous harassment from Mr. Kukstis as beginning in December 2014 and continuing into August 2015. At no time did Mr. Kukstis make physical contact or reach out in person to contact Jane Doe B. His harassing contact was limited to use of social media and messages.

The base offense level increased in this instance from 18 to 24 due to guideline enhancement under USSG § 2A6.2(b)(1), if more than one of the factors was involved in the case. Here, the facts included violation of a court protection order (A) and a pattern of activity (E).

**Jane Doe A (August 2015 – January 2018):**

Mr. Kukstis's actions involving Jane Doe A are by far the most extensive, despite the lower guideline calculation for this offense. Mr. Kukstis was in a romantic relationship with Jane Doe A beginning around September, 2015. Joseph now reflects back to the pain he caused her:

> "I met her at a bad time in my life where trust didn't exist. I blocked out all positive encouragement and trapped myself in a negative downward spiral that I couldn't recover from. To this day I still feel awful for what I put her through, all the degrading names, telling her to commit suicide and sharing her personal business with people. I broke her trust. I placed her in fear. I ruined this relationship and that wasn't my intention…All the degrading names was really a self-reflection on myself, I was feeling all those things towards myself…I didn't try to stop or get help until it was too late, and all the damage was done by then." Exhibit A.

This relationship was very important to Mr. Kukstis. However, his responses and behavior did not comport with those feelings. He looks back with regret and disgust at the harm he caused to her throughout this time period and how it has affected her since.

**C. Other 18 U.S.C. § 2261A Cases, USSG § 2A6.2**

The range of behavior covered by this statute is extensive. A review of cases in the 1st Circuit and elsewhere reveals some common threads and patterns, but a wide-range of behaviors

that meet the statutory requirements of "cyberstalking." The United States Sentencing Commission Guideline Manual includes one section to handle all types of stalking or domestic violence offenses at once, USSG § 2A6.2.

For example, the statute at issue here covers a broad range of behavior and intentions with respect to use of electronic communications: "…with the intent to *kill, injure, harass, (or) intimidate*…another person…to engage in a course of conduct that…places that person in *reasonable fear of the death of or serious bodily injury to (the) person*….**or** causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress…"   Here, the Information specifies that Mr. Kukstis's mental state is limited to "harass" and "intimidate" with the intent to "engage in a course of conduct that caused, attempted to cause, or would reasonably be expected to cause substantial emotional distress."  The Guidelines, however, do not distinguish between subsections of the statute.

It is important to note that in other cyberstalking cases, an instance of violence was the culmination of the stalking behavior, rather than as a domestic violence incident while the relationship is still ongoing. This distinction matters when evaluating the nature and circumstances of the offense. In other cases involving 18 U.S.C. § 2261A, the conduct escalates beyond the conduct found in Mr. Kukstis's case. For example, in *United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014), the defendant and the victim had dated for roughly two years, after which the defendant persistently harassed and stalked her for four years. Initially, he would show up at stores and locations where he expected her to be, given his knowledge of her routine. When she changed her routine and took out a restraining order against him, he began posting photos of her in lingerie on Craigslist alongside her home address. Men began to show up at her door claiming that they had spoken with her online and had come seeking a sexual encounter. This persisted for

eight months, at which point the victim moved to Louisiana and changed her name. After a few months in her new life, men began showing up to her door again. She searched the internet and found that the defendant had uploaded videos of them having sex on at least three videos alongside her new address. The websites urged viewers to contact her. Soon after, the defendant created both a Facebook and Myspace account in the victim's name that included sexually explicit images of her. The victim was forced to move again, returning to Maine. As many as six men a night showed up at her home seeking sex after having been contacted by the defendant via Yahoo messenger through fake profiles he created in her name with sexually explicit photographs and links to pornographic sites containing videos of her and the defendant. There, the harassment caused the victim to move three times; the defendant caused multiple strangers to come to her house in three locations; the defendant physically stalked her in addition to harassment via the internet. The sentence imposed was 60 months.

Other cases involving 18 U.S.C. § 2261A involve evidence that the defendant planned to take action, whether by making physical contact after the threats, or to cause violence by use of a dangerous weapon. See, example, *United States v. Lee*, 790 F.3d 12 (1st Cir. 2015), (The defendant's wife left him after a "turbulent" relationship to live with her boyfriend. There was a history of the defendant being controlling and verbally and physically abusive to the victim before the official stalking charges began. She eventually left him in April of 2012, at which point he emailed her about 300 times and called her relatives in an attempt to find her. Some of the emails contained threats of violence to both her and her new boyfriend. The victim and the defendant spoke on the phone and through email, with the victim insisting he leave her alone. He sent at least one death threat. Tensions eased when the defendant fell ill and required surgery. At the urging of his sister, the victim gave the defendant her address. The defendant told at least one

person at this point that if she did not come home, he would kill her and her boyfriend. In August of 2012, he borrowed a car and drove to Maine from his home in the Midwest. He drove past her home at least a dozen times. The victim called the police and the defendant was apprehended. A search of his care revealed five firearms, multiples knives, a bayonet, rolls of duct tape, rubber gloves, plastic bags and sheeting, handcuffs, camouflage face paint, ammunition, a camera with photos of the victim's home and maps leading to her address. Analysis of his computer showed that he had searched for a blueprint of the victim's home and he told the police that he had been able to find its layout online.) There, the crime involved the defendant driving several hundred miles with preparation and plans to commit a physical crime against the victim.  The sentence imposed was 100 months.

      Other cases involve the defendant broadcasting the victim's home address and widely posting advertisements/private photo's on the internet for broad consumption. In *United States v. Ogden*, 725 Fed.Appx. 441 (8th Cir. 2018), the defendant harassed his ex-girlfriend in a "lengthy campaign" including posting eight craigslist ads posing as her (complete with photos, one of which was partially nude) and soliciting sex with anonymous third parties. The ads also included pornographic images and her home address and as a result, men began appearing at her home seeking sexual encounters. When asked to end the harassment, the defendant refused and stated the victim was "going to get what she deserves." In *United States v. Hobgood*, 868 F.3d 744 (8th Cir. 2017), the defendant had a short, romantic relationship with the victim, after which she "rebuffed his advances" and eventually moved out of state. The defendant began contacting the victim via email, Facebook and third party text messages to demand an apology "for her treatment of him." He then created social media accounts with her name and image, posing her as a prostitute and erotic dancer. He contacted her employer both online and through the mail

claiming that she occupied these roles. He then reached out to her and her family to say that he would continue making these representations until she "apologized to him." There, the defendant received a sentence of 30 months.

Joseph Kukstis made repeated anonymous harassing communications over the internet, most frequently towards Jane Doe A. The content of the communications is certainly degrading and harassing. The anonymous and repeated nature of the communications caused distress in the women he contacted. It is important, however, to also note that the behavior had a limit. The vast majority of the harassing communication was directed towards each Jane Doe, rather than a vast campaign of public humiliation, or worse, danger. The nature and circumstances of the offense, in line with other cases involving cyberstalking, warrants a lower sentence than 3-4 years. Rehabilitation and specifically helping Joseph through counseling and accountability with his family and probation, must be a primary focus of sentencing.

## II. A Sentence that Focuses on Rehabilitation, Balances Some Incarceration with Community Supervision is Appropriate

Mr. Kukstis requests that the Court impose a sentence of 18 months incarceration, followed by 3 years of supervised release. He agrees to seek mental health counseling. He agrees to address any further substance abuse issues. He agrees to submit to monitoring of his own computer use. The proposed special conditions of supervision will address any potential for misuse of social media or email accounts in the future (specifically, special condition 5). The defendant will address special conditions 4 and 6 at sentencing, to make sure the conditions are not overly restrictive.

This sentence includes isolation from the community, but places a heavy emphasis on rehabilitation. Mr. Kukstis has never spent time inside a prison before his arrest in this case. Mr.

Kukstis, and the community, will be best served by his ability to integrate back into society and to become fully employed again.

This recommendation considers the framework of the United States Sentencing Guidelines, is sufficient to promote respect for the law, and serve the purpose of punishment, rehabilitation, and deterrence, pursuant to 18 U.S.C. § 3553, while recognizing the circumstances in this case. 18 U.S.C. § 3553(a)(1) provides that "[t]he court, in determining the particular sentence to be imposed, shall consider the nature and circumstances of the offense and the history and characteristics of the defendant." See also *Rita v. United States*, 127 S. Ct. 2456, 2473 (2007).

Rehabilitation should be a primary focus of the sentence in lieu of isolation from the community. Mr. Kukstis has a strong network of support in his family members and friends who responded with letters of support for Mr. Kukstis.

Respectfully submitted,
JOSEPH T. KUKSTIS,
By his Attorney,

*/s/ Cara McNamara* Cara McNamara
AK Bar # 0511088
Assistant Federal Public Defender
Federal Defender Office
51 Sleeper Street, 5th Floor Boston, MA 02210
Tel: 617-223-8061

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 14, 2018.

*/s/ Cara McNamara*
Cara McNamara